**HANTMAN & ASSOCIATES**
ATTORNEYS AT LAW
1414 AVENUE OF THE AMERICAS
SUITE 406
NEW YORK, NEW YORK 10019
(212) 684-3933
FAX (212) 755-1989

ROBERT J. HANTMAN*☐
CARLOS M. CARVAJAL*
TIMOTHY C. BAUMAN*

*New York Bar
☐Also admitted to New Jersey,
Pennsylvania and Florida Bars

NEW JERSEY OFFICE:
JOSEPH J. FERRARA
OF COUNSEL
111 Patterson Avenue
Hoboken, New Jersey
07030

TEL: (201) 798-5010
FAX: (201) 798-5070

August 7, 2008

*DELIVERED: BY HAND*
Hon. Richard J. Sullivan
United States District Court
Southern District of New York
500 Pearl Street, Rm. 615
New York, New York 10007

Re: **Linden Airport Management Corporation v. New York City Economic Development Corp., 08 Civ. 3810 (RJS)**

Dear Judge Sullivan,

Although we understand there is a conference scheduled for September 19, 2008, this letter shall serve as the response of our client, Linden Airport Management Corporation ("Linden"), to the defendant New York City Economic Development Corporation's ("EDC") request for a pre-motion conference. By way of a brief background, on May 28, 2008, the EDC submitted a request for a pre-motion conference on a motion to dismiss pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(1) & (6) for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted. On July 30, 2008, the EDC moved to renew its application, adding the contention that Linden lacks standing.

For purposes of opposing the EDC's request, I will address the EDC's argument pursuant to FRCP 12(b)(1) & (6) first. The EDC claims that Linden has failed to state a claim upon which relief can be granted and that this court lacks subject matter jurisdiction because "all of plaintiff's claims raise questions reviewable under Article 78

of the New York Civil Practice Law and Rules ("CPLR"), and the federal courts are not empowered to hear such claims." See, eg., EDC Request for Pre-Motion Conference May 28, 2008 ¶ 1. This assertion mischaracterizes Linden's complaint. In addition, we are in the process of submitting an amended complaint which will include a number of additional causes of action which arise under the United States Constitution, laws or treaties of the United States as well as under enactments of Congress regulating commerce, including causes of action for violation of the Due Process, Equal Protection, and Commerce Clauses of the United States Constitution and for violation of the Sherman Antitrust Act 15 U.S.C. §§ 1 and 2, (dependant upon whether FirstFlight's concession permit is approved by the New York City Comptroller ("Comptroller")). Therefore it is respectfully submitted that this Court already has and will continue to have original subject matter jurisdiction over these federal claims under 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over all of the remaining claims is appropriate under 28 U.S.C. §1367(a).

28 U.S.C. §1367(c) gives the Court discretion to exercise supplemental jurisdiction over Article 78 proceedings, and in the past, federal courts have recognized the propriety of adjudicating such claims. See, eg., Yonkers Racing Corp. v. City of Yonkers 858 F.2d 855 (2nd Cir.1998) (the Second Circuit affirmed the exercise of jurisdiction by the district court to hear an Article 78 proceeding that had been originally commenced in state court) Cartanega v. City of New York, 345 F.Supp.2d 414 (S.D.N.Y., 2004) (where the district court exercised its supplemental jurisdiction to hear the Article 78 claim, explaining that among others, one factor for doing so was to "avoid the inefficiencies that would result from parallel state and federal litigation.")

The EDC next argues that dismissal is proper because all of Linden's causes of action merely "re-state" its basic claim that the RFP process was arbitrary and capricious and are therefore all part of the Article 78 claim. The EDC has not cited one case that supports this argument, but it does point to several inapposite cases. For example, the EDC badly misconstrues Madison Square Garden, L.P. v. New York Metropolitan Transp. Authority 19 A.D.3d 284, 286 (1st Dept.) when it states that all of petitioner's claims were dismissed because they were all part of the Article 78 claim.

More accurately however, the Court stated that consideration was given to petitioner's other arguments, but were dismissed because they were "unavailing," and not because they were all part of the Article 78 claim. Id. at 287. The fact is that Linden has requested relief for several other valid and proper legal claims that are entirely separate from its Article 78 claim, as well as declaratory relief to remedy Linden for the harm it has suffered as a result of the EDC's arbitrary and capricious grant of the FBO award to FirstFlight and its subsequent denial of the award to Linden, assuming its approval by the comptroller.

The EDC's next argument, that Linden lacks standing because it did not participate in the RFP process is entirely without merit. The EDC argues that the proposal submitted in response to the EDC's RFP was not submitted on behalf of Linden, but rather, on behalf of an unformed corporate entity, the "Wall Street Heliport

Corporation." From the outset, the proposal was prepared using the name "Linden Airport Management Corporation," and for all relevant purposes on Linden Airport Management Corporation stationary. In fact, on the front cover of the proposal, it clearly states "prepared for the City of New York and the New York City Economic Development Corp. by Paul P. Dudley and **Linden Airport Management Corporation**." (emphasis added). See, egg., Linden proposal. (Exhibit B to filed complaint)

As the EDC makes clear, on page 22 of Linden's proposal, it does state that the heliport operation "will be established as a new separate corporate entity." The establishment of the Heliport Corporation as a subsidiary however, was intended to be a feature of value to the EDC, as Linden was offering to specifically take control of operations, in contrast to the format that was conducive to the mess created at the West 30th Street Heliport (referring to the diversion of funds easily camouflaged by the franchise holder's web of interlocking corporations and entities.) In fact, this was discussed at the interview with the EDC and the significance and value of this element was acknowledged by the EDC staff as being a "good idea." Clearly, for all intents and purposes, Linden was the entity submitting the bid and participating in the RFP process, and to assert otherwise is completely illogical, misleading and could easily be remedied in any event.

The EDC's argument that the formation of the Wall Street Heliport Corporation was a condition precedent to its performance is similarly erroneous. In Linden's proposal, it clearly states that the establishment of the Wall Street Heliport Corporation will "serve to limit legal liabilities as well as for clarity concerning reporting issues." Clearly, the intent for establishing this new entity was for internal reasons and had no logical bearing on Linden's ability to be the FBO as well as its qualification to receive the award.

In the interest of having this matter expeditiously reviewed, I have sent two formal letters to the NYC Comptroller, the Honorable William C. Thompson Jr., (Exhibit A and B) and I have also made a formal FOIL request to the EDC (Exhibit C). The EDC responded to our FOIL request after the time allotted in §89(3) of the Freedom of Information Law. In addition, the EDC's late request provided no information, but rather stated that any responsive documents would be made available to our client on or about August 22, 2008. As such, Linden has been left empty handed as the EDC continues to drag its feet in meeting its legal obligations, thus strengthening the case that the EDC's entire selection process was arbitrary and capricious.

It is believed that discovery will reveal that the entire process was interfered with by influential political entities that have undermined the integrity of the Request for Proposal procedure and have violated Linden's constitutional rights. Furthermore, it is disingenuous for the City to have opposed our request for expedited discovery by claiming that we should make a FOIL request, only to put the request on the back-burner.

Based on the foregoing, it is submitted that this court does have proper subject matter jurisdiction to hear this case, and Linden has standing to bring its claims and has

asserted valid claims upon which relief may be granted. While the Comptroller has not yet acted on the FirstFlight concession permit, as far as we know, we reserve the right to supplement this letter or move for further relief should circumstances change.

Respectfully,

Robert J. Hantman, Esq.

cc: Terri Feinstein Sasanow, Esq./ New York City Law Department

**HANTMAN & ASSOCIATES**
ATTORNEYS AT LAW
1414 AVENUE OF THE AMERICAS
SUITE 408
NEW YORK, NEW YORK 10019
(212) 684-3933
FAX (212) 755-1989

ROBERT J. HANTMAN*☐
CARLOS M. CARVAJAL*
DIANA Y. GARCIA*

NEW JERSEY OFFICE:
JOSEPH J. FERRARA
OF COUNSEL
111 Patterson Avenue
Hoboken, New Jersey
07030

*New York Bar
☐Also admitted to New Jersey,
Pennsylvania and Florida Bars

TEL: (201) 798-5010
FAX: (201) 798-5070

June 12, 2008

The Honorable William C. Thompson Jr.
Comptroller of the City of New York
Office of Contract Administration
1 Centre Street
New York, New York 10007

Re: <u>New York City Economic Development Corporation's Request For Proposal for a Fixed Based Operator at the Downtown Manhattan Heliport, November 5, 2007- Project Code #3016</u>

Dear Comptroller Thompson,

We represent Linden Airport Management Corporation ("Linden"), a large municipally-owned public aviation facility, which recently submitted a proposal in response to the above mentioned "Request For Proposals" issued by the New York City Economic Development Corporation ("NYCEDC").

The purpose of this letter is to urge you to reject the selection of FirstFlight, Inc. (FirstFlight) as the Fixed Base Operator ("FBO") at the Downtown Manhattan Heliport, which has been the subject of featured articles in the New York Times and in the Star Ledger in New Jersey. There is also a case pending in the United States District Court – Southern District of New York on this same issue.

On June 2, 2008, I attended a meeting before the Franchise and Concession Review Committee ("FCRC"). During this meeting, I presented the attending members of the FCRC with a letter (Exhibit A) stating our client's concerns regarding the awarding of

1

the FBO contract for the Downtown Manhattan Heliport to FirstFlight. Pursuant to this letter, attached please find the transcript of the hearing which took place on May 29, 2008 addressing an Order To Show Cause before the Honorable Judge Sullivan, United States District Court Judge, Southern District of New York. (Case No. 08 Civ. 3810- Exhibit B)

Recently, our client received a copy of FirstFlight's proposal submitted during the secret second round of bidding for the Downtown Manhattan Heliport FBO contract. We have attached the aforementioned proposal for your thorough review. (Exhibit C) Among other things, FirstFlight's proposal:

1. Confirms that Linden's proposal (Exhibit D) was far superior in proposed services, infrastructure development and maintenance, and potential revenue generation for New York City ("the City") as compared to both of FirstFlight's proposals. In fact, Linden's proposal provided the City with 25% of the gross revenue from the first dollar earned plus a fuel flowage fee of $.25 per gallon. FirstFlight's best and final offer started at 18% and eventually increased to 25%, and there is no flowage fee;

2. Confirms that Steven Trenk is a Senior Advisor of FirstFlight, which takes on added significance when you consider the allegations set forth in the complaint in the aforementioned case currently pending in the United States District Court, Southern District of New York;

3. Reveals that, in direct contrast to FirstFlight's statements made during the FCRC hearing on May 29, 2008, which indicated that Robert Grotel would serve as the interim General Manager of FirstFlight, FirstFlight's intended General Manager is Steven Trenk. Mr. Grotel, other than serving as an administrator for the City of New York who was responsible for overseeing the contracts with the City's heliports, has no experience running a heliport on a day-to-day basis. As such, FirstFlight still fails to meet the experience requirement set forth in the RFP;

4. Reveals that despite FirstFlight's claims of assembling the "dream team" in order to execute renovations and improvements at the Downtown Manhattan Heliport, FirstFlight has no previous experience constructing elements of a heliport. In stark contrast, Linden has constructed over 49 hangars and four fuel facilities;

5. Reveals that FirstFlight's second round proposal calls for a 4,000 gallon fuel tank facility, where Linden's first round proposal calls for an 8,000 gallon fuel tank facility.

According to our client, FirstFlight only operates aviation retail locations and airplane charter businesses. It has no experience with actual physical and managerial aspects of the operation of an airfield or heliport. Even in their retail operations, FirstFlight is only a tenant of the airport and that airport is managed by someone else who is qualified to do so. In contrast, Linden has been the actual operator of an entire airfield;

a facility which is one hundred (100) times larger than the Downtown Manhattan Heliport.

On Friday, April 4, 2008, Paul Dudley, president of Linden, received an e-mail from Ms. Pat Wagner, operator of the East 34th Street heliport in Manhattan. (Exhibit E) In this email, Ms. Wagner states that, "I just find it so unnerving, that the city is entertaining a contract with FirstFlight who has in Abigails [Trenk] own words, 'Has contracted Air Pegasus' to run the heliport." This email speaks for itself and undermines the validity of any and all proposals submitted by FirstFlight in support of its efforts to secure the FBO contract for the Downtown Manhattan Heliport.

We respectfully suggest that any decision rendered pertaining to the FBO contract of the Downtown Manhattan Heliport without a thorough review of the submitted information would be arbitrary and capricious.

For your convenience and in the interest of full disclosure, I have included a copy of our FOIL request (Exhibit F) which we have submitted to the NYCEDC.

Naturally, any decision by you would require you to obtain copies of these same documents, as making a decision without the proper "due diligence" would be prima facie "Arbitrary and Capricious".

We respectfully submit that a thorough objective and impartial review of this matter -- free of political considerations- and in the best interests of the taxpayers of New York, the public, the tenants of the Downtown Heliport, and interstate commerce and free competition will support the fact that the award of a concession to FirstFlight should be rejected.

This letter is not a fully exhaustive outline of our position but is simply an overview of the situation and our client reserves all of its rights and remedies provided by law. This letter shall be an exhibit in any future litigation although we are hopeful of an amicable resolution.

I am available to discuss this matter with you at your convenience and believe a "face to face" meeting with Paul Dudley and I would be very constructive, particularly if Mayor Bloomberg can also attend with counsel for the City and further court intervention can hopefully be avoided.

Thank you for your time and consideration. Please notify me at once of any decision made by you.

Very Truly Yours,

Robert J. Hantman, Esq.

cc: Mayor Bloomberg
All Franchise and Concession Review Committee Members without enclosures
Terri Feinstein Sasanow, Esq., New York City Law Department without enclosures
All New York City Economic Development Corporation Members without enclosures
Paul Dudley

**HANTMAN & ASSOCIATES**
ATTORNEYS AT LAW
1414 AVENUE OF THE AMERICAS
SUITE 408
NEW YORK, NEW YORK 10019
(212) 684-3933
FAX (212) 755-1989

ROBERT J. HANTMAN*◻
CARLOS M. CARVAJAL*
DIANA Y. GARCIA*

NEW JERSEY OFFICE:
JOSEPH J. FERRARA
OF COUNSEL
111 Patterson Avenue
Hoboken, New Jersey
07030

*New York Bar
◻Also admitted to New Jersey,
Pennsylvania and Florida Bars

TEL: (201) 798-5010
FAX: (201) 798-5070

July 29, 2008

IMMEDIATE ACTION REQUIRED

The Honorable William C. Thompson Jr.
Comptroller of the City of New York
Office of Contract Administration
1 Centre Street
New York, New York 10007

The Honorable Robert Walsh
The City of New York
Department of Small Business Services
110 William Street
New York, New York 10038

    Re: <u>New York City Economic Development Corporation's Request For Proposal for a Fixed Based Operator at the Downtown Manhattan Heliport, November 5, 2007- Project Code #3016</u>

Dear Messrs Thompson and Walsh,

    We represent Linden Airport Management Corporation ("Linden"), the operator of a large municipally-owned public aviation facility. This letter supplements our previous letter dated June 12, 2008 which is enclosed herein. Linden submitted what is clearly the highest and best proposal in response to the above mentioned "Request for Proposals" issued by the New York City Economic Development Corporation ("NYCEDC").

We understand that the Commissioner of Small Business Services ("SBS") signed an agreement with First Flight, Inc. (First Flight") on July 21, 2008 and forwarded it to your office irrespective of the facts that they were not the best and highest bidder and despite the documentation provided to them detailing First Flights unsuitability.

Linden is by far the most experienced and, unlike the designee, does not have any history of discriminatory conduct involving a public franchise. Linden, again unlike the designee, also has no history of diverting franchise revenues to deny the State its proper share.

Additionally, as any deliberations were not public and Linden has received none of the documents to their FOIL requests Linden believes that the NYCEDC and SBS failed to consider the overwhelmingly negative testimony and information provided at the Franchise and Concession Review Committee ("FCRC") hearing and available in the public record of that hearing. It should be further noted that the FCRC never actually voted to approve FirstFlight, Inc. ("FirstFlight") as the new fixed based operator ("FBO") at the Downtown Manhattan Heliport ("DMH") but rather the SBS. Unfortunately, there is no indication that the NYCEDC, the FCRC or the SBS has reviewed any documentation sent by our office on behalf of our clients which oppose FirstFlight's application.

We understand that you will be exercising your obligation and duty to seriously, objectively, and impartially investigate the propriety of awarding the contract for the FBO to FirstFlight – a "penny stock company" whose shareholders are believed to include a number of politically connected individuals. We also have been advised that a law partner of Mr. Wachtel, a prominent shareholder of FirstFlight, has had business dealings with the president of the NYCEDC. We respectfully request that your office investigate this latest revelation among the many issues concerning the issuance of the FBO contract to FirstFlight.

Mr. Paul Dudley, the President of Linden, and I would appreciate meeting with you face-to face to further present our case that a contract award to FirstFlight, a penny stock company with various investors and entanglements with political persons and previous employees would be arbitrary, capricious and warrants a thorough investigation by the proper authorities.

In the meantime, we will consider seeking to remove a stay which is currently in effect in a pending lawsuit before the Honorable Judge Sullivan, Southern District of New York: <u>Linden Airport Management Corp. v. New York City Economic Development Corporation</u>- Case No. 08 Civ. 3810.

This letter and your Decision, to the extent it ignores all the information previously supplied to your office and registers what is believed to be a highly improper award will be an exhibit in the pending lawsuit.

Thank you for your prompt attention to this matter.

Very truly yours,

Robert J. Hantman, Esq.

cc: Terri Feinstein Sasanow, Esq.

**HANTMAN & ASSOCIATES**
ATTORNEYS AT LAW
1414 AVENUE OF THE AMERICAS
SUITE 406
NEW YORK, NEW YORK 10019
(212) 684-3933
FAX (212) 755-1989

ROBERT J. HANTMAN*☐
CARLOS M. CARVAJAL*
DIANA Y. GARCIA*

NEW JERSEY OFFICE:
JOSEPH J. FERRARA
OF COUNSEL
111 Patterson Avenue
Hoboken, New Jersey
07030

*New York Bar
☐Also admitted to New Jersey,
Pennsylvania and Florida Bars

TEL: (201) 798-5010
FAX: (201) 798-5070

June 10, 2008

*Via Federal Express and Email:*

Ms. Judith Capolongo
New York City Economic Development Corporation
Records Access Officer
110 William Street
New York, New York 10038

Re: New York City Economic Development Corporation's Request For Proposal for a Fixed Based Operator at the Downtown Manhattan Heliport, November 5, 2007- Project Code #3016

Dear Ms. Capolongo,

Please be advised that we represent Linden Airport Management Corporation ("Linden") in the above referenced matter. Pursuant to the Freedom of Information Law, I am writing to you in order to request that the following be made available for inspection at the offices of the New York City Economic Development Corporation ("NYCEDC"):

1. All original and supplemental submissions with all attachments to the NYCEDC's Request For Proposal ("RFP") and all documents submitted in support of the proposals;

2. All documents, letters, e-mails, and records of telephone calls regarding all aspects of the RFP, the responses to the RFP and the selection of a

1

    winner in response to the RFP for the Fixed Based Operator ("FBO") contract for the Downtown Manhattan Heliport;

3. All documents, including notes, interviews and scoring sheets used by the NYCEDC in its selections process for evaluating potential FBOs for the Downtown Manhattan Heliport;

4. All correspondence and documents, including emails, which relate to and refer to the principals, directors, partners and majority shareholders of FirstFlight, Inc. ("FirstFlight") (www.fflt.com);

5. The detailed selection process which governed the NYCEDC's decision in awarding the FBO contract of the Downtown Manhattan Heliport to FirstFlight;

6. All documents that relate to and refer to the second round of proposals including why a second round of proposals was allowed to proceed after the RFP deadline was over;

7. All documents that relate to and refer to why the original plan to have a "Selection Committee" was scrapped at the last minute;

8. All documents that relate to and refer to the relationship between FirstFlight and the new NYCEDC President and his role in the selection process;

9. All documents that relate to, refer to and support a determination that FirstFlight was the successful FBO over Linden and Atlantic Aviation;

10. All documents from the New York – New Jersey Port Authority as well as all helicopter operators criticizing the selection of FirstFlight;

11. All documents that relate to and refer to the letters from helicopter operators criticizing the selection of FirstFlight;

12. All documents that relate to and refer to the conflicts of interest or potential conflicts of interest with FirstFlight being an FBO and having an ownership interest in helicopter companies such as "Liberty Helicopters", "Stars and Stripes", and "Las Vegas Helicopter Tours";

13. All letters of recommendation on behalf of FirstFlight;

14. All documents that relate to and refer to the letters of recommendation for FirstFlight;

15. All documents in the possession of the NYCEDC that evidence, relate to and refer to the relationship between FirstFlight, Air Pegasus Heliport and Liberty Helicopter – the largest helicopter operator in New York City and the collusion or conflicts existing therein;

16. All documents relating to numerous meetings or contacts between the employees, representatives or owners of FirstFlight and members of the NYCEDC and its staff;

17. All reference checks and investigations conducted into all parties which submitted proposals in response to the RFP;

18. All studies, if any, by the NYCEDC, that relate to and refer to the impact and weight of the recent audit report from the New York State Comptroller's Office regarding Air Pegasus Heliport ("APH" or "Pegasus"), as reflected in http://www.osc.state.ny.us/audits/allaudits/093008/06s75.pdf;

19. All documents that relate to and refer to why there was no mention of a second round of proposals;

20. All documents that relate to and refer to the basis or authority for the second round of proposals and why Linden was not invited to participate and its subsequent impact;

21. A list of all lobbyists, public relations firms or public officials who contacted the NYCEDC after Linden's proposal was submitted, but before the second round of RFPs and before the award of the FBO contract to FirstFlight;

22. Copies of any contracts or proposed contracts for the operation of the Downtown Manhattan Heliport;

23. A list of all shareholders of FirstFlight owning more than 3% interest in the company as of the time of their Proposal;

24. The background, history of lawsuits, arbitrations, and regulatory agency violations and sanctions of Steven Sands and Martin S. Sands and any related entities, including, but not limited to, Sands Brothers & Co., Ltd., Sands Brothers International, Ltd., Laidlaw & Co., Sands Brothers Asset Management LLC, Sands Brothers Venture Capital III LLC, and Laidlaw & Company (UK) Ltd;

25. To the extent any requested documents are not produced, please detail what documents are being withheld and the reason for withholding.

It would be appreciated if you could respond to this request and make the documents available to me as soon as possible.

Very Truly Yours,

Robert J. Hantman

cc: Terri Feinstein Sasanow, Esq., New York City Law Department-
via fax